### BROUSSARD et al. v. CRUSE et al.

(Court of Civil Appeals of Texas. Galveston. Jan. 7, 1913. Rehearing Denied Jan. 23, 1913.)

1. APPEAL AND ERROR (§ 1136*)—DISPOSITION —AFFIRMANCE AS TO PART—GROUNDS OF DECISION.

In the absence of conclusions of law showing on what ground the trial court based its judgment, it must be affirmed if there is any ground presented by the pleadings and supported by the evidence upon which it can be properly rested.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3247–3486; Dec. Dig. § 1136.*]

2. TRESPASS TO TRY TITLE (§ 9*)—TITLE TO SUPPORT ACTION.

Plaintiff in trespass to try title on showing that he was the owner of a special act certificate on which the land was located, and under which the title conveyed by the patent inured to his benefit, was entitled to recover, whether the title be legal or equitable.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 12; Dec. Dig. § 9.*]

3. LIMITATION OF ACTIONS (§ 19*)—RECOVERY OF REAL ESTATE.

By its express terms the four-year statute of limitations (Rev. St. 1895, art. 3358) does not apply to actions to recover real estate.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 73–85; Dec. Dig. § 19.*]

4. PUBLIC LANDS (§ 174*)—PATENTS—LEGAL TITLE.

Where a special act, authorizing the issuance of a certificate to the original holder of an unconditional certificate, is a pure donation, conferring no rights on the holder's assignee, the heirs of the holder are both the legal and beneficial owners of the special act certificate; and a patent thereunder vests them with the legal title.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 552–554; Dec. Dig. § 174.*]

5. TRESPASS TO TRY TITLE (§ 25*)—DEFENSES —STALE DEMANDS.

One who claims land by virtue of a certificate, and its location and survey, through patents issued to the heirs of the original holder, has, as against such heirs, the legal title, and the doctrine of stale demand has no application to his claim; and, even if the heirs have an equitable title, it is distinguishable from a mere right to acquire title, and the defense of

stale demand cannot be interposed against the claim.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 30, 31; Dec. Dig. § 25.*]

6. PUBLIC LANDS (§ 176*)—TAXES—GRANTING OF PATENT BY STATE—CONSTRUCTION.

The holder of an unconditional headright certificate, based on a previous conditional certificate, assigned both certificates, and the assignee located the unconditional certificate; but patents were refused on his certificate, on the ground that the county clerk had not made a proper legal return thereof, and the assignee withdrew the certificate from the land office, and thereafter procured a special act, directing the Commissioner of the General Land Office to issue a certificate to the original holder; and the Commissioner thereupon issued such certificate to the assignee, and patents thereon issued to his transferee under a transfer reciting that it was issued to the original holder in lieu of his headright certificate, and that the assignor claimed the special act certificate by virtue of his ownership of such certificate. Held, in trespass to try title by the heirs of the original holder, that the special act could not be construed as a bounty or donation to them, in which the assignee of the original unconditional certificate had no interest.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 571–575; Dec. Dig. § 176.*]

7. STATUTES (§ 218*)—CONTEMPORARY CONSTRUCTION.

The contemporary construction of a special act, directing the Commissioner of the Land Office to issue a certificate to the original holder of an unconditional certificate, as shown by the action of the Governor and the Commissioner thereunder, is entitled to great weight in the construction of the act.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 294, 295; Dec. Dig. § 218.*]

Appeal from District Court, Hardin County; L. B. Hightower, Judge.

Trespass to try title by Mary Broussard and others against W. W. Cruse and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

Walter S. Parker, of Kountze, and Dougherty & Gordon and Jno. M. Conley, all of Beaumont, for appellants. Greer & Minor, of Beaumont, and R. S. Neblett, of Corsicana, for appellees.

REESE, J. This is an action of trespass to try title by Mary Broussard and others against W. W. Cruse and others to recover two tracts of land of 640 acres each patented to David J. Johnson, assignee of Thomas Hughes. A trial, without a jury, resulted in a judgment for defendants, from which plaintiffs prosecute this appeal. There are no conclusions of fact and law. The evidence, however, is substantially without conflict, from which we deduce the following conclusions of fact, which are in the main taken from appellants' brief, with some additions taken from appellees' brief, verified from the statement of facts:

"(1) On December 7, 1838, the board of land commissioners of Jasper county issued to Thomas Hughes a conditional headright certificate for 1,280 acres of land, and numbered 504, second class.

"(2) The conditional headright certificate granted to Thomas Hughes on December 7, 1838, was reported by the clerk of the land board issuing said certificate along with other conditional certificates, and on June 26, 1840, the traveling board entered an order as to said conditional certificates in the following language, to wit: 'The annexed and foregoing claims being conditional, we, the commissioners, can only report that they stand fair on record subject to an act of a future Congress.' It does not appear that any further action of any kind was had with reference to the said conditional certificate.

"(3) On February 18, 1850, the board of land commissioners of Liberty county issued to Thomas Hughes an unconditional headright certificate for 1,280 acres of land; the said unconditional certificate being based on the said conditional certificate issued on December 7, 1838.

"(4) On March 31, 1851, Thomas Hughes transferred and assigned both of said conditional and unconditional certificates to Reuben B. Vest.

"(5) The unconditional headright certificate issued to Thomas Hughes was located in two surveys, in Freestone county, by Reuben B. Vest, and the certificate and field notes of the two surveys were returned to and filed in the General Land Office; and after patents were refused on these surveys the certificate was withdrawn from the Land Office by Reuben B. Vest.

"(6) Thomas Hughes died in 1851, and the appellants [plaintiffs] are his heirs.

"(7) On August 29, 1856, the Legislature of the state of Texas passed a special act authorizing and directing the Commissioner of the General Land Office to issue to Thomas Hughes a certificate for 1,280 acres of land. [Sp. Laws 1856, c. 281.]

"(8) On October 9, 1856, the Commissioner of the General Land Office, acting under and by virtue of said special act, issued to Thomas Hughes a certificate for 1,280 acres of land numbered 5061/5062.

"(9) On October 20, 1859, Reuben B. Vest transferred and assigned to Henry D. Patrick the certificate for 1,280 acres of land issued on October 9, 1856, to Thomas Hughes.

"(10) On February 4, 1860, Henry D. Patrick transferred and assigned the certificate for 1,280 acres of land issued to Thomas Hughes on October 9, 1856, to David J. Johnson.

"(11) The certificate for 1,280 acres of land issued to Thomas Hughes on October 9, 1856, under the provisions of the special act, was located upon the two surveys of land involved in this suit by David J. Johnson, and patents were issued to the two surveys to David J. Johnson, assignee of Thomas

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

Hughes, on May 1, 1863, and March 8, 1881, respectively.

"(12) The unconditional headright certificate issued to Thomas Hughes on February 18, 1850, was presented to the Commissioner of Claims for approval in 1859, and on December 6, 1859, the same was rejected and not approved by the Commissioner of Claims. It appears from the record that the certificate was presented to the Commissioner of Claims for approval by J. W. Warren, and that one W. B. Johnson claimed to be the owner of the certificate at that time.

"(13) By agreement of parties in evidence, it was agreed that appellants [plaintiffs] are the only heirs of Thomas Hughes; and that the appellees [defendants] have and hold all of the right, title, and interest in and to the two surveys of land in controversy that was ever held by David J. Johnson.

"(14) Plaintiffs' original petition, upon which the case was tried, was in the statutory form of trespass to try title, and the defendants' first amended original answer, upon which the case was tried, contained a general demurrer, a general denial, statutes of limitations of three, four, and ten years."

Unconditional certificate No. 155, issued to Thomas Hughes by the board of land commissioners of Liberty county, was located in Freestone county, a part of which location was in conflict with older surveys. The certificate and field notes, together with the transfer of the certificate from Hughes to R. B. Vest, which was indorsed on the back of the certificate, were withdrawn from the Land Office by one Middleton in 1856, to be presented to the committee of the Legislature; and it is sufficiently shown by correspondence of about that date that, as the certificate had not been reported by the county clerk as required by law, this was done in order to procure a special act curing this defect. Middleton was acting for Vest, assignee of this certificate. The certificate was so presented to the legislative committee, and the special act certificate, when issued, was delivered to Middleton. This special act certificate was located in Hardin county, and returned to the General Land Office with the field notes and placed in file No. 118, Liberty, second class. The Freestone county locations of the original unconditional certificate made by Vest, assignee of Hughes, were placed in file No. 296, and this file refers to Liberty file 118 for relocation by virtue of special act certificate. The locations under the special act certificate on the land in controversy were regarded by the Commissioner of the General Land Office at that time and since as relocations of the unconditional certificate made in Freestone county; and by virtue of the transfer of the unconditional certificate to R. B. Vest it was assumed by the executive officers of the government dealing with the matter at the time of the passage of the special act and the issuance of the certificate thereunder that Vest was the owner, and entitled to the benefits of the special act certificate. Vest was treated as the owner of the certificate. It appears that the only defect in the complete title of Vest, as assignee of Hughes, to all the benefits intended to be conferred by the unconditional certificate was that the county clerk of Liberty county had not made proper return of the certificate, as required by law. David J. Johnson, to whom the patent was issued as assignee of Thomas Hughes, died in 1866, and his estate was administered during that year in Navarro county. The land in controversy was inventoried as part of his estate. Nothing further appears with regard to this claim to the land until 1893, when the heirs of Johnson executed a power of attorney to Norman G. Kittrell generally to look after the land, redeem from tax sale, etc. Since that date the heirs of Johnson have been actively and openly asserting their claim, in the courts and out of them, making sales and partitions, etc.

The estate of Thomas Hughes was administered in Jefferson county, the county adjoining Hardin, in which the land lies, in 1851, and his father-in-law was appointed administrator. An inventory of his estate was filed, which did not include or refer to the land in controversy, nor any of the certificates referred to. The first assertion of claim on the part of the representatives or heirs of Hughes to this land was the institution of this suit in 1911.

The transfer of the special act certificate by Vest to Patrick in 1859 contains the recital that the said certificate was issued to Thomas Hughes in lieu of his headright certificate, issued by the board of land commissioners of Liberty county, No. 155. The recitals in this transfer show that Vest claimed the special act certificate by virtue of his ownership of the unconditional certificate No. 155. The same recitals in substance appear in the transfer of the special act certificate from Patrick to Johnson in 1860. Stephen Crosby was the Commissioner of the General Land Office who issued the special act certificate in 1856, and was also Land Commissioner when the first patent was issued to Johnson in 1863. This patent, which was to Johnson, assignee of Hughes, recites that the land was located by virtue of special act certificate No. 5061/5062, "issued to said Hughes by the Commissioner of the General Land Office October 9, 1856, and which was transferred to R. B. Vest March 30, 1851, who transferred it to Henry D. Patrick October 20, 1859, by whom it was conveyed to said Johnson February 4, 1860." The patent to the other 640 acres, issued in 1881 to Johnson, assignee of Hughes, contains the same recitals.

[1] The petition was in statutory form of an action of trespass to try title. Defendants pleaded the general issue and the statute of limitations of three, four, and ten years. In

the absence of conclusions of law, it does not appear on what ground the trial court based its judgment; so if there is any ground presented by the pleadings and supported by the evidence upon which the judgment can be properly rested it must be affirmed. This is recognized by appellants, who, in an able brief, undertake to show that the judgment cannot be supported upon any of the issues presented by the pleadings and supported by the evidence.

[2, 3] It is intimated in the brief of appellants, though not shown by the record, that the trial court was of the opinion that the action was barred by the four-year statute of limitations. If this be true, it could only be by treating the suit as one to reform the patent. We cannot imagine on what other grounds this defense could be supposed to apply. The statute is article 3358, R. S., and is as follows: "Every action other than for the recovery of real estate, for which no limitation is otherwise prescribed, shall be brought within four years next · after the right to bring the same shall have accrued and not afterwards."

Plaintiffs seek, in an action in trespass to try title, to recover the land, claiming that, as they were the owners of the special act certificate under which the land was located, the title conveyed by the patent inured to their benefit. If their contention be true, it does not matter whether their title be a legal or equitable one; in either case they would be entitled to recover the land in this action, and by its express terms the statute of four years does not apply. Stafford v. Stafford, 96 Tex. 106, 70 S. W. 75.

[4] If, as contended by appellants, the special act of the Legislature which authorized the issuance of the certificate to Thomas Hughes was a pure donation, and conferred no rights upon the owner by transfer from Hughes of the previous unconditional certificate, then the heirs of Hughes were both the legal and beneficial owners of the certificate. In such case we do not think that the conclusion can be avoided that the title conveyed by the patent inured to their benefit, and that the title thus vested was a legal title. Johnson v. Newman, 43 Tex. 628; Satterwhite v. Rosser, 61 Tex. 172; Adams v. House, 61 Tex. 639; Humphreys v. Edwards, 89 Tex. 512, 36 S. W. 333, 434.

[5] If the patent had issued to Hughes, or the heirs of Hughes, and it should be determined that, by virtue of the transfer to him of the unconditional certificate, Vest was entitled to the benefit of the special act certificate, under the authorities cited it is clear he would have had the legal title to the land conveyed by the patent. The law is thus stated in Humphreys v. Edwards, supra: "One who claims land by virtue of the certificate, and its location and survey, through patents issued to the heirs of the original grantee, has, as against such heirs, the legal title; and the doctrine of stale demand has no applica-

tion to his claim." Such was also the holding as to the character of the title of the owner of the certificate in the other cases cited. We can see no substantial difference in principle between such cases and the present case, if, as is contended by appellants, the special act certificate was a pure donation for the benefit of Hughes or his heirs, in which case the assignee of the original unconditional certificate would have had no title to nor interest in the certificate issued under the authority of the special act. But even if the title of the appellants were an equitable, as distinguished from a legal, title, still it must be distinguished from a mere right to acquire title; and under the decisions of this and other Courts of Civil Appeals here cited stale demand cannot be interposed as a defense. Land Co. v. Hyland, 8 Tex. Civ. App. 601, 28 S. W. 206; Lochridge v. Corbett, 31 Tex. Civ. App. 676, 73 S. W. 96; Betzer v. Goff, 35 Tex. Civ. App. 406, 80 S. W. 671; Lyster v. Leighton, 36 Tex. Civ. App. 62, 81 S. W. 1033; Bell County v. Felts, 120 S. W. 1065; Hardy Oil Co. v. Burnham, 124 S. W. 221; Lumber Co. v. Pinckard, 4 Tex. Civ. App. 671, 23 S. W. 720, 1015. We are aware, however, that the doctrine of these cases has never been expressly approved by the Supreme Court to the full extent stated therein.

[6] This brings us to the principal question involved in this appeal. It is contended by appellants that the provisions of law were not fully complied with in the issuance of the unconditional certificate to Hughes, which was transferred by him to Vest, and that, at the time of the passage of the special act of 1856, the holder of that certificate had no right enforceable at law, and that therefore the grant by that act of a certificate for 1,280 acres of land was an act of pure grace and bounty, intended by the Legislature for the benefit of Hughes and his heirs, in which the assignee of the original unconditional certificate has no interest. We think the facts of this case clearly distinguish it from McKinney v. Brown, 51 Tex. 94, Hines v. Thorn, 57 Tex. 98, and other cases in line with them. There can be no doubt that Hughes, under the law, had earned the right to receive a certificate for 1,280 acres of land, and that such certificate had been issued to him, which he had transferred to Vest. It would appear that there had been a failure to fully comply with all of the provisions of law to fully perfect and protect this right. Evidence of all of this, and of the transfer by Hughes of the certificate, was before the Legislature. The only defect appears to have been a failure of the county clerk of Liberty county to make report to the General Land Office of the grant of the unconditional certificate. However, that certificate seems to have been recognized by the authorities as conferring the right claimed, and the certificate was surveyed and located by Vest, as assignee, on land in Freestone county; but such lo-

cation, being in conflict with older surveys, was abandoned, and the certificate withdrawn, for the purpose of being presented to the committee of the Legislature, for the purpose of having a special act passed to cure the defect in the original certificate. The reason the act did not authorize the issuance of a certificate to the assignee of the original was probably that the Legislature was indisposed to pass upon the validity of the transfer, and with no intention of ignoring the rights of the assignee. No reason can be conceived why the Legislature should have desired to make a donation to Hughes or his heirs, if he had received full value of the right which he had earned to the land in the sale of the unconditional certificate. Such a course would have been manifestly unjust. The act was passed at the instance of Vest, the assignee of his agents. The act has the following proviso, "Provided it shall appear that these parties have never received headrights." From the beginning the officers of the state, whose duty it was to execute this special act, construed it as vesting in Vest, by virtue of the assignment to him of the original certificate, the right to the special act certificate. It is not necessary to here repeat the evidence, which indubitably shows this fact, beginning with the issuance of the certificate immediately upon the passage of the act and delivery of the same to Vest or his representative and followed by the issuance of the patent to the assignee of Vest. That the act was passed in recognition of Hughes' right to 1,280 acres of land, which he had earned by his residence in compliance with the offer made to him by the government, is too clear to admit of argument. The certificate was expressly directed not to issue if Hughes had already received *his headright*; that is, the land earned by him, and to which he was equitably, if not legally, entitled. If this was the purpose of the Legislature, the grant cannot be considered as a donation or pure gratuity. What was said in Lyne v. Sanford, 82 Tex. 61, 19 S. W. 849, 27 Am. St. Rep. 852, is applicable to the facts of this case: "The terms of this act clearly imply that the consideration that moved the Legislature to grant the certificate was the right existing in Farris by reason of his having complied with the law under which the certificate was earned. If this was the purpose of the Legislature, the grant cannot be considered as a gratuity or donation to the heirs." That the right was not enforceable in the courts does not affect the question, if it appear that the grant was made in recognition of the right and the obligation, although not legally enforceable, resting on the state. Houston Oil Co. v. Gallup, 50 Tex. Civ. App. 369, 109 S. W. 959–969, also pages 965, 966, on rehearing. This general principle is also supported by Sherman v.

Pickering, by this Court, 56 Tex. Civ. App. 633, 121 S. W. 536, in which writ of error was refused.

[7] The contemporaneous construction given this act by the Commissioner of the General Land Office then in office, as shown by the record, and by the Governor in the issuance of the patent, is entitled to great weight. G. H. & S. A. Ry. Co. v. State, 81 Tex. 602, 17 S. W. 67. As was said by the Supreme Court in passing upon a similar question in H. & T. C. Ry. Co. v. State, 95 Tex. 521, 68 S. W. 781: "And in view of the fact, as found by the trial judge, that this has been the construction acted upon by the Governor and other officers of the state, whose duty it was to execute the law, we are of opinion that this construction ought now to prevail. Especially after a long lapse of time, and after the claims of innocent third parties may have intervened, it is only in a very clear case that the courts would be justified in overriding the action of successive administrations in issuing certificates and granting patents to land." Appellants have by their silence recognized and acquiesced for over 61 years in the claim of right to the benefits of this special act certificate by the assignee of their ancestor, openly asserted in the patents and by active insistence upon their claim since, with no word of protest from appellants until the filing of this suit. Such conduct is well-nigh conclusive that they considered that they had no interest in the certificate, nor in the land patented thereunder.

We have examined each of the several assignments of error in appellants' brief and the propositions thereunder, and are of the opinion that none of them presents sufficient grounds for reversing the judgment; and it is therefore affirmed.

Affirmed.