## MODERN BROTHERHOOD OF AMERICA v. CHANDLER.

(Court of Civil Appeals of Texas. Dallas. April 6, 1912. Rehearing Denied April 20, 1912.)

1. INSURANCE (§ 818*)—MUTUAL BENEFIT INSURANCE—ACTION—ADMISSIBILITY OF EVIDENCE.

In an action on a benefit certificate, in which there was an issue as to whether deceased, a woman, had died of an abdominal ailment or disease, evidence that "about 25 per cent. of the married women of the United States have trouble down in the abdominal front" was inadmissible.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 2003–2005; Dec. Dig. § 818.*]

2. APPEAL AND ERROR (§ 1050*)—HARMLESS ERROR—ADMISSION OF EVIDENCE.

In an action on a benefit certificate, where the defense was that deceased, a woman, had died from an abdominal ailment or disease which she had not disclosed in her application for insurance, the admission of evidence that "about 25 per cent. of the married women of the United States have trouble down in the abdominal front" was harmless, in view of findings that deceased practiced no fraud upon the defendant, and made no untrue statement to defendant's medical examiner, and that she did not know or have good reason to believe that she had a disease of any kind when she secured the certificate.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4153–4160, 4166; Dec. Dig. § 1050.*]

3. INSURANCE (§ 818*)—MUTUAL BENEFIT INSURANCE—ACTION ON CERTIFICATE—ADMISSION OF EVIDENCE.

Where defendant, in an action on its benefit certificate, claimed that at the time the insured was reinstated in August she was not in good health, so that the attempted reinstatement was ineffectual, evidence by the surviving husband that deceased had been doing nearly all of her household work up to the day she was taken sick, at the time of her last illness in the following September, was admissible.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 2003–2005; Dec. Dig. § 818.*]

4. EVIDENCE (§ 560*)—EXPERT TESTIMONY—CONTRADICTION.

In an action on a benefit certificate, where the defense was that the death of insured was caused by an abdominal ailment or disease which the insured had failed to disclose in her application, and where physicians, who operated on deceased, testified that they had found some evidence of womb trouble which might have contributed to her death, evidence of the surviving husband that neither of these physicians had ever advised him that the deceased had such trouble was admissible as bearing on the weight to be given the testimony of the physicians.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2380; Dec. Dig. § 560.*]

5. APPEAL AND ERROR (§ 724*)—ASSIGNMENTS OF ERROR—SUFFICIENCY.

An assignment of error which points out no specific error, and which does not refer to

the page of the transcript where the bill of exceptions referred to therein may be found, is not entitled to consideration.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2997–3001, 3022; Dec. Dig. § 724.*]

6. APPEAL AND ERROR (§ 733*)—ASSIGNMENTS OF ERROR—SPECIFICATION OF ERROR—SUFFICIENCY OF EVIDENCE.

An assignment of error, merely reciting that the court entered a judgment and found against the defendant for the amount sued for, with interest, to which action the defendant excepted, on the ground that the said finding was contrary to the law and the evidence, is too general to be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3025–3027; Dec. Dig. § 733.*]

Appeal from District Court, Dallas County.

Action by George A. Chandler, by his next friend, against the Modern Brotherhood of America. Judgment for plaintiff, and defendant appeals. Affirmed.

William H. Atwell, of Dallas, for appellant. E. G. Senter, of Dallas, for appellee.

TALBOT, J. The appellee, George A. Chandler, a minor, by next friend, his stepfather, brought this suit against the Modern Brotherhood of America, upon a benefit certificate for $1,000, issued to his mother, Mrs. Sarah V. Rose. The plaintiff alleged, in substance, that the defendant was an incorporated society under the laws of the state of Iowa; that it had a system of local lodges, and its membership consisted of the membership of such local lodges; that on the 18th day of July, 1910, it issued to the deceased, Sarah V. Rose, the benefit certificate sued on, wherein it promised to pay to the beneficiary, who was the plaintiff, Chandler, one full assessment of all benefit members in good standing in said society, not to exceed $1,000, in case of the death of the said insured and member, Sarah V. Rose, while in good standing; that Sarah V. Rose died on the 24th day of September, 1910, in good standing; and that the certificate was in full force and effect, and unpaid. The prayer sought judgment for the $1,000, with the legal rate of interest from January 20, 1911; also 12 per cent. thereon as statutory damages, and $250 attorney's fees. The defendant demurred to that portion of the petition which asked for statutory damages and attorney's fees, and the demurrer was sustained. Further answering, the defendant denied the allegations of plaintiff's petition, and, among other things, specially pleaded that the Modern Brotherhood of America was not an insurance company, as that term is understood, but was a fraternal organization writing benefits for its membership, provided such membership complied with the rules and regulations and constitution and by-laws of the fraternity, which included a complete disclosing to the fraternity the ailments asked about in the application or mem-

bership blank when the person applied for membership, and that the deceased did not disclose the presence of a disease and ailment at the time she applied for membership, whereby she forfeited any right that might have accrued to her or her beneficiary under the certificate, and that the same was in fact null and void; that the deceased was suffering, at the time that the application for membership was made by her, with what is known and called pus tubes, the existence of which she failed to disclose in her written application to the defendant, and by reason of which failure she concealed from the defendant a disease and ailment which she was bounden to disclose, and by reason of which failure she secured the certificate, and in this way the defendant was imposed upon, and all of the members of the defendant, in that she concealed the existence of said disease or ailment, which said disease and ailment was the cause of and contributed to her death; that, on August 1, 1910, the deceased was suspended from membership in defendant's society for failure to pay her dues and assessments, as she was bound to do under the rules and by-laws and regulations of the defendant, wherein and whereby defendant forfeited any and all claim by reason of the certificate sued upon, and thereafter, about August 19th, she sought reinstatement, but that such reinstatement was not in fact a reinstatement, because at said time of attempting such reinstatement the deceased was not in good health, and therefore could not be reinstated, as is provided by the by-laws and rules and regulations of the defendant.

To the answer of the defendant, the plaintiff replied by a general denial, and specially, in substance, that the deceased made her application in good faith, and to the best of her knowledge and belief answered all of the questions put to her by the medical examiner and agent of defendant; that she was not skilled in the science of medicine; that the medical examiner asked her certain questions, and in reply thereto she stated all the facts within her knowledge; that when the application was thus prepared by the defendant's medical examiner he caused the deceased to sign the application so prepared by him, and assured her that it was a full and correct statement of the facts as given by her; that she gave the medical examiner all the information she had upon the subjects inquired about by him, made complete and correct answers to all questions propounded to her, and that she concealed nothing from him; that if the deceased was suspended on August 1, 1910, for nonpayment of assessments said assessments were thereafter, on August 19, 1910, paid by her to the secretary of defendant's local lodge in Dallas, Tex.; that the deceased, at that time, was in good health, and the payment

of said assessments made in good faith; that defendant's secretary and local officer, to whom she paid said assessments, accepted and approved said payments, and thereby adjudged her to be eligible to reinstatement, and so pronounced her at the time, and reinstated her as a member of defendant, as he was duly authorized to do by defendant.

The case was tried by the court, without a jury, and the trial resulted in a judgment for the plaintiff, and the defendant appealed.

The court filed the following conclusions of fact, which are adopted by this court: That the defendant, the Modern Brotherhood of America, on the 9th day of May, 1910, duly issued a certificate to Sarah V. Rose, of Dallas, Tex., countersigned by Z. M. Duckworth, secretary of its local lodge at Dallas, whereby it agreed, in case of the death of said Sarah V. Rose while in good standing, to pay $1,000 to the son and sister of said member, and that thereafter said policy was rewritten, so as to make same payable only to George A. Chandler, son of said member. That the said Sarah V. Rose died in Dallas, Tex., on the 24th day of September, 1910; that she was taken ill at her home in Dallas on the 16th of September, and was suffering with constipation or locked bowels. That she was removed from her home to the Baptist Sanitarium on the evening of the 23d of September, and was immediately after operated upon, and died on the following afternoon. That at the time of her death the said Sarah V. Rose was a member in good standing in said defendant's organization, having paid all of the lawful dues and fees required up to that time. That there is no evidence showing, or tending to show, that the said Sarah V. Rose practiced, or attempted to practice, a fraud upon the defendant, either at the time she received the certificate sued upon, or at the time of the payment by her, on August 19, 1910, of the dues which became delinquent on the 1st day of said month; and defendant has failed to show that any statement, recorded in the policy sued upon as having been made by her to the medical examiner of the defendant at the time said policy was sued on, was untrue, or that the said Sarah V. Rose acted in bad faith in making any such statement. The defendant failed to establish that Mrs. Rose knew, or had good reason to believe, that she had an incipient or developed malady of any kind when she joined the society in question. She was an unusually strong, vigorous, and healthy looking woman, doing all of her own housework for years and up to immediately preceding her death. There was no evidence that she died as a result of pus tubes. There was no evidence that she was operated on for pus tubes. It was only after the operation that that alleged fact was specifically ascertained. There was no evidence that she died as a result of the operation. There was no evi-

dence that she did not die as a result of the operation. There was evidence that on another occasion she was somewhat sick with her bowels, and that an emetic or some kind of medication relieved her. The doctors were silent as to what caused her death —if they knew. From all the evidence and facts, this court concludes that Mrs. Rose had no intention of and did not perpetrate a fraud upon this society, but acted in good faith; and that the defendant society failed to cast a cloud on her right, through her beneficiaries, to recover on the certificate issued and sued on in this case.

[1, 2] The first assignment of error complains of the court's action in permitting the witness, Dr. Marchman, to testify that "about 25 per cent. of the married women of the United States have trouble down in the abdominal front." The proposition presented is that "testimony showing a similar ailment by a large per cent. of the female population of the United States to that sought to be guarded against by the defendant in its membership cannot be considered, for the purpose of displacing any of the contract rights and guarantees pleaded by it against the admission of such ailed persons into its ranks." This testimony was doubtless inadmissible; but, in view of the other testimony adduced, and the fact that the case was being tried by the court without a jury, we think it can safely be said that the defendant suffered no material injury thereby. The court, upon practically undisputed testimony warranting it, found that the deceased, Mrs. Sarah V. Rose, practiced no fraud upon the defendant, either at the time she received the certificate sued on, or at the time of the payment by her, on August 19, 1910, of the dues which became delinquent on the 1st day of said month, and that the testimony was insufficient to show that any statement, recorded in said certificate as having been made by Mrs. Rose to the medical examiner of the defendant, was untrue, or that she knew, or had a good reason to believe, that she had an incipient or developed malady of any kind when she became a member of the defendant, or otherwise acted in bad faith toward defendant in becoming one of its members and securing said certificate; that there was no evidence that she died as a result of pus tubes, as contended by the defendant, or that she was operated on for pus tubes; and that it was only after the operation, which was performed with the view of relieving locked bowels, that it was specifically ascertained that she was suffering from pus tubes.

[3] The second assignment complains of the admission, over its objection, of that portion of the testimony of the witness Charles Rose to the effect that his wife, Mrs. Rose, had been doing her household work, with the exception of a very little, ever since she had been married up to the day she was

taken sick at the time of her last illness. There was no error in this ruling of the court. The testimony objected to was relevant and material to the contention made by the defendant that Mrs. Rose was not in good health on the 19th day of August, 1910, when she was reinstated as a member of the defendant. More fully stated than in defendant's bill of exception, the testimony of the witness in this connection is as follows: "She [Mrs. Rose] was taken sick late in the evening of the 16th of September before her death. Up to that time, I did not know of any trouble. That morning I left for Oak Cliff, and she was apparently in good health. Prior to that time, she had been going about and doing her own household work. She had been doing that, with the exception of a very little time, ever since we have been married; and we have been married 13 years."

[4] Nor do we think the court erred in admitting the testimony of the witness Charles Rose, complained of in appellant's fourth assignment of error, to the effect that neither Dr. Marchman nor Dr. Pierce ever advised him that his wife, Mrs. Rose, had womb trouble. This testimony was admissible as a circumstance to be considered by the court in determining the weight to be given to the opinions of these physicians that, after they had operated upon Mrs. Rose, and after she had died, they found some evidence of womb trouble, which might have contributed to her death.

[5, 6] Appellant's fifth assignment of error is as follows: "The court erred in entering judgment for the plaintiff, as is shown and set out in the defendant's fifth bill of exception, which is referred to and made a part hereof." This assignment is not presented in accordance with the rule relating to the briefing of case, and is not entitled to consideration. It points out no specific error; and the page of the transcript where the bill of exception, referred to therein and made a part thereof, may be found is not stated. To find out the error complained of, we would be compelled to search the transcript for the bill of exception, and then, unaided by the assignment, seek for and determine from a reading of the particular error of which the assignment complains. This, under the rules, we are not required to do. We have, however, read the bill of exception; and, if we were disposed to consider it, we find that it does not point out specifically, as required by the rules, the error appellant seeks to have reviewed. It simply recites that the court entered a judgment and found against the defendant for the amount sued for, to wit, $1,000, with 6 per cent. interest per annum from the 20th day of January, 1911, to which action the defendant excepted, "on the ground that the said finding was against the testimony and the weight thereof, and was against the law, and was contrary to the law and the evidence, and was unsupported by the testimony." As will be observed, neither the assignment nor the bill of exception points out wherein the finding or judgment of the court is against the testimony, or is unsupported by the evidence. We have therefore, if we consider the bill of exception as a part of the assignment, an assignment which, in effect, simply declares that the judgment of the court is contrary to the law and the evidence. Such an assignment of error is too general to be considered.

The findings of fact made by the trial court are well supported by the evidence; and the judgment entered in accordance therewith is affirmed.